## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
### Miami Division

GEORGE DAGNESSES, an individual,
      Plaintiff,

Vs.                              Case no: 15- -cv-23989-UU

TARGET MEDIA PARTNERS, a foreign Corporation,
And TARGET MEDIA PARTNERS OPERATING
COMPANY, LLC, a foreign corporation,
      Defendants.
_____/

### AMENDED COMPLAINT

This is an action by Plaintiff, George Dagnesses, ("Mr. Dagnesses") against Defendant, Target

Media Partners, a Delaware Corporation ("Target Media") and Target Media Partners Operating

Company, LLC, ("Target Operating") a Delaware LLC, under Title VII of the Civil Rights Act

of 1964, as amended by 42 USCA 2000e, pursuant to Florida Statute Chapter 760, the Florida

Civil Rights Act of 1992, and pursuant to Florida Statute Section 448.101 and 102 et. seq, to

redress injury done to him by the Defendant's discriminatory treatment on the basis of his

Sex/Gender, and/or Race/National origin and for retaliation for Mr. Dagnesses objecting to a

violation of such Laws and to make whole, Plaintiff, Mr. Dagnesses.  Mr. Dagnesses also files

one other State law claim for Breach of Contract.

### Jurisdiction

1.  Jurisdiction of this Court is invoked pursuant to 28 USCA sections 451, 1331, 1343, 1367, 42

USCA section 2000(e)-5(f), Title 29 USCA section 2617 (2) and 29 USCA section 1132 (e)(2).

This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42

USCA section 2000 (e)(k), et. seq., the Civil Rights Act of 1991, 42 USC section 1981(a),

2

pursuant to the Florida Civil Rights Act of 1992, Florida Chapter 760 and pursuant to 29 USCA 2601 et. seq.

2.  The employment practices hereafter alleged to be unlawful were committed in the Southern District of Florida, Southern Division, in Miami Dade County, Florida.

### Parties:

3.  Plaintiff, George Dagnesses, was for all relevant times herein referenced a resident of Miami Dade County, Florida.

4.  Defendant, Target Media, is a corporation organized and existing under the laws of the State of Delaware, doing business in Miami Dade County, Florida, and Broward County Florida, and within the jurisdiction of this Court. The actions committed as alleged herein were committed by Target Media from its offices in Miami Dade County, Florida.

5.  Defendant, Target Operating, is an LLC, organized and existing under the laws of the State of Delaware, doing business in Miami Dade County, Florida, and Broward County Florida, and within the jurisdiction of this Court. The actions committed as alleged herein were committed by Target Operating from its offices in Miami Dade County, Florida.

6.  At all times pertinent to this Complaint, Defendant, Target Media, owned and operated a media company which published and distributed publications, published and distributed such from Miami Dade and thereby engaged in interstate commerce.

7.  Defendant, Target Media, employed Plaintiff, Mr. Dagnesses.  It was at all times pertinent to this Complaint engaged in interstate commerce and employed 15 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding year.

8.  Further, Defendant, Target Media, had the right to control employee/Plaintiff, Mr. Dagnesses', conduct.  It also had the right to hire, supervise and set the work schedule of Mr. Dagnesses, as well as set the terms and conditions of his employment, including pay rate. Defendants, Target Media and Target Operating, had common centralized management and control of labor relations and common ownership.

9.  At all times pertinent to this Complaint, Defendant, Target Operating, owned and operated a media company which published "Car and Truck Buyers Guide" and "Auto Guide", published and distributed such from Miami Dade and thereby  engaged in interstate commerce.

10.  Defendant, Target Operating, employed Plaintiff, Mr. Dagnesses.  It was at all times pertinent to this Complaint engaged in interstate commerce and employed 15 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding year.

11.  Further, Defendant, Target Operating, had the right to control employee/Plaintiff, Mr. Dagnesses', conduct.  It also had the right to hire, supervise and set the work schedule of Mr. Dagnesses, as well as set the terms and conditions of his employment, including pay rate.

**Facts:**

12.  Plaintiff, Mr. Dagnesses, began employment with Defendants, Target Media and Target Operating, on or about February, 2007 as Miami Dade Sale's Manager for the publication "Car and Truck Buyers Guide". (An asset of Defendants).


13  Plaintiff, Mr. Dagnesses, was hired by Sabina Pavda ("Sabina"), General Manager for "Car and Truck Buyers Guide."  At all material times herein, Sabina was acting within the course and scope of her agency authority for Defendant, Target Media, and/or Target Operating, was the boss of Mr. Dagnesses and had the authority to direct his behavior and duties.


14.  Shortly after Plaintiff, Mr. Dagnesses, was hired he was informed by Sabina that Defendants' employee, Linda Coffman, Regional Vice President of these publications, (with Miami, Palm Beach and Broward in her territory), did not want to hire him.  She explained to him that he needed to keep a low profile because she does not like men.  In South Florida, out of the roughly fifty (50) office, sales or managerial employees, only two (2) were men (Plaintiff and Mr. Jose Coto).


15.  Plaintiff, Mr. Dagnesses, was also told by Sabina "she will do all she can to burry you and she will not be on your side."  However, Sabina also gave Mr. Dagnesses the good news.  She works out of Ohio and the interactions will not be frequent.

16.  Plaintiff, Mr. Dagnesses, being the optimist, believed it could work; especially being he has a likeable nature.  However, at the beginning Mr. Dagnesses had no idea the cost of staying employed.

17.  Shortly after arriving Plaintiff, Mr. Dagnesses, did meet with Ms. Coffman.  At this meeting, in response to Mr. Dagnesses' product enhancement suggestion to Ms. Coffman, she jumped out of her seat and screamed at him "are you Crazy?  Are you stupid?"  After this incident, because Sabina was aware of Mr. Dagnesses' value to the company, she promised that to the extent she could she would be the buffer between Ms. Coffman and Mr. Dagnesses.

18.  Subsequent to this meeting Plaintiff, Mr. Dagnesses, became personally aware that what Sabina told him was true about Ms. Coffman not liking men.  Mr. Dagnesses was responsible for hiring independent multimedia sale's representatives.   Sabina does review the candidates.  Ms. Coffman was not required to approve these employees prior to hiring.  However, on one occasion when Ms. Coffman discovered that Mr. Dagnesses hired a man her response was "Always hire women.  Women are the ones who bring bees to honey.  They will open doors." (This gentleman eventually quit after incidents where he felt the company was withholding money from his checks without justification).

19.  On another similar occasion in October 2012 Ms. Coffman stated a similar sentiment (as in paragraph 18): "Do you know what you're doing?  If you are going for the honey, make sure it is a pretty bee.  Men do not bring in money."

20.  Ms. Coffman also called Plaintiff, Mr. Dagnesses, a "Spic" on two (2) occasions in private meetings.  In November 2011 Mr. Dagnesses was speaking Spanish on the phone with his mother, who just got out of surgery, and under her breath, but clearly Ms. Coffman stated "Spic", looked Mr. Dagnesses directly in the face and said "we are done here."

21.  One another incident in June 2012, after Sabina left the office during the meeting where Mr. Dagnesses, Ms. Coffman and Sabina were in attendance, she looked at Mr. Dagnesses, faked a cough and stated "Spic" and "let's move on."

22.  On one other occasion, in July 2013, within hearing distance from a sale's representative, Ligia Obeso, Ms. Coffman again called Mr. Dagnesses a "Spic."

23.  Plaintiff, Mr. Dagnesses, has the heritage of Hispanic ("Cuban") and Greek.   Ms. Coffman is of non-Hispanic origin.

24.   During Plaintiff, Mr. Dagnesses', employment with Defendant, Target Media and/or Target Operating, he would also hear derogatory comments made by Ms. Coffman regarding Hispanics and persons of Jewish descent.  Mr. Dagnesses remembers one incident on or about the winter of 2012. Ms. Coffman stated that every time she landed in South Florida, there were nothing but "Jews and Cubans."

25.   Ms. Coffman could not even stop her hate filled harassment against Plaintiff, Mr. Dagnesses, during his struggle with cancer.  On or about August-September 2013 at the time Mr. Dagnesses was diagnosed with cancer, he had plenty of vacation and sick time to use so as to allow him to keep this matter personal.  Mr. Dagnesses put in for his time off.  However, Ms. Coffman would not allow this.  Ms. Coffman stated that the only way she would allow his leave was if it was medical.  While Mr. Dagnesses did not wish to, he explained to Ms. Coffman that it was a serious medical condition.  Hence, Ms. Coffman requested and received a doctor's letter from Mr. Dagnesses.

26.   This letter was not sufficient to satisfy Ms. Coffman's need to push Mr. Dagnesses' limits as to his personal information being revealed.  She phoned Mr. Dagnesses' physician, asking if Mr. Dagnesses did have cancer.  She explained to the physician's office that she wanted to make sure he "was not pulling a fast one."  The physician refused the information citing to Federal Privacy Acts.  Not once did Mr. Dagnesses ever give Ms. Coffman or any other employee at Defendant, Target Media, any reason to believe that he would "pull a fast one."

8

27.  If this were not enough, subsequent to Plaintiff, Mr. Dagnesses', surgery for his cancer, while he was still on doctored ordered sick leave, Ms. Coffman forced Mr. Dagnesses to break his sick leave one (1) week into recovery, (knowing he was recovering from cancer surgery), and come to a meeting where she would be in attendance in Miami. (She was traveling from Ohio).

28.  After Ms. Coffman learning of Plaintiff, Mr. Dagnesses', cancer diagnosis it became clear that she had enough of Mr. Dagnesses.  The mistreatment and hate became so intense that when there were meetings with both in attendance Sabina had to ask Ms. Coffman on a few occasions to stop with the harassment/negativity and move on.

29.  As an example of this (paragraph 28) Ms. Coffman began her very personal passive aggressive attacks against Plaintiff, Mr. Dagnesses.  On a few occasions Ms. Coffman would on one day agree with Mr. Dagnesses' suggestion as to a carefully considered plan or strategy and a day later change her opinion and act as though there had been no agreement on the topic.  Instead she would respond to such suggestions with hyper critical and belittling comments.

30.  Ms. Coffman physically assaulted Plaintiff, Mr. Dagnesses, for an occurrence for which he had no control.  In June 2013 Ms. Coffman was in Miami for a meeting where she wished everyone to be in attendance.  There was a sales' representative who could not be in attendance due to her necessary medical appointment with her specialist; which she could not change.  Mr. Dagnesses explained to Ms. Coffman that this person could not be in attendance for this reason.

She was informed of Ms. Coffman's meeting after she had already committed to her necessary medical appointment.  After Mr. Dagnesses told Ms. Coffman this she physically poked him with great strength in the chest a few times while repeating "no more surprises from you." She repeated this three (3) times and poked him with force three to four times. Mr. Dagnesses was so shocked, embarrassed and traumatized that he left, got in his car and went for a drive.  All sales' representatives witnessed this behavior.

31.  Plaintiff, Mr. Dagnesses, went to Human Resources in June of 2013, explained what occurred as to the poking incident, but H.R. did nothing, stating that it was actually Mr. Dagnesses' fault for not communicating well enough. Mr. Dagnesses spoke with Karen Heinz in H.R., who was admittedly very close with Ms. Coffman.  Mr. Dagnesses was aware of this relationship but made this attempt in hopes Ms. Heinz would be fair and objective. (If for nothing else he felt she would not wish the Defendant, Target Media and/or Target Operating, to be exposed to liability for such a vulgar and illegal incident).  The incident was totally ignored.

32.  In May 2013, there was an alleged "promotion" offered to Plaintiff, Mr. Dagnesses, by President, Jim Sington.  Because the "promotion" was having the responsibility for two (2) separate positions (now consolidated) with very little salary increase Mr. Dagnesses declined. Ms. Coffman refused to extend to Mr. Dagnesses the same salary and benefits that the job description paid.  Jose Coto's occupied that position prior and his salary was a total of $122,000.00 per year.  Mr. Dagnesses was offered $85,000.00 per year. Further, Mr. Dagnesses would still be answering to Sabina, and there was to be no autonomy as the previous person in

this position had.  However, Ms. Coffman gave him no choice but to accept less pay and more responsibility.  The new position was General Manager (from prior position of "sale's manager").

33.  Once Plaintiff, Mr. Dagnesses, took this position Sabina explained to him: "I cannot protect you anymore."

34.  On or about February, 2014, Ms. Coffman singled out Plaintiff, Mr. Dagnesses, and kept him out of meetings relevant to his job.  One example is when she intentionally and without cause, kept him from going to Chicago for the launch of Defendants' new internet marketing program which was important to his job.  Relating to the launch of this product, two weeks after the Chicago launch there was a training session with all the people he supervised in attendance.  The meeting was set up to train for the launch of a new product.  Ms. Coffman demanded that Mr. Dagnesses not participate, but that he sit in his office with the door closed.  The gender of all the people in the meeting were Female and they were all Mr. Dagnesses Sales' representatives hired and trained by him.

35.  Another tactic used by Ms. Coffman to harass Plaintiff, Mr. Dagnesses, was paying him bonuses and commissions due to him months later than were due.  On one occasion Sabina stepped in to help Mr. Dagnesses resolve the issue.  To this day Defendants refuse to pay him $8,000.00 due in commissions.  At one point Defendants illegally deducted from Mr. Dagnesses'

11

regular pay under the pretext that they were deductions for previous overpayments. Truth in fact is the money labeled as overpayments was money the company owed Mr. Dagnesses for previous past due commissions, not overpayments. This was a clever guise again by Ms. Coffman to humiliate and harm Mr. Dagnesses. This was done by the authority of Ms. Coffman.

36. On or about the end of 2013, Ms. Coffman also implemented daily and weekly activity reports only reserved for Plaintiff, Mr. Dagnesses, where he was to be responsible for explaining where he was and who he was with during the day for all periods of time, including his lunch hours. He was the only manager required to author these reports.

37. During this time and on several other occasions Sabina explained to Plaintiff, Mr. Dagnesses, that "she is pushing your bottoms so you will quit."

38. The Plaintiff, Mr. Dagnesses, was qualified for the position with Defendant, Target Media and/or Target Operating. Throughout his employment Mr. Dagnesses excelled as an employee. He always met or exceeded the goals that had been set for him. Notwithstanding this, during his employment, Ms. Coffman would find the pettiest issue to belittle him with or threaten his job with, including accusing him of being overpaid. Some exchanges were so severe that Sabina confronted Ms. Coffman stating "why do you hate George so much?"

39.  Plaintiff, Mr. Dagnesses, always voiced disapproval, dissatisfaction and objections to the manner in which he was treated (referenced above) to his supervisor, Sabina.  Sabina accepted the sad fact that because Ms. Coffman was her supervisor and the supervisor of Mr. Dagnesses, he needed to accept the terms of his employment, including the degrading treatment and harassment; that is if he wanted to keep his job and she wanted to keep her job.

40.  Then on or about April 20, 2014, without warning or counseling, Plaintiff, Mr. Dagnesses, was terminated.  The justifications for termination are exposed as pretexts and unworthy of belief.

41.  In her hateful haste to terminate Mr. Dagnesses, Ms. Coffman failed to even realize her ex-post facto asserted reasons for termination are not logically justified.  One incident, which occurred on or about the end of 2013 or in January 2014 (3-5 months prior to termination) is as follows: after much counseling by Mr. Dagnesses of a Sale's representative, who was not motivated and even admitted the job was not for her, this sale's representative resigned.  Mr. Dagnesses was criticized for the "involuntary termination."  Prior to this person resigning, Mr. Dagnesses notified H.R. of her missing meetings, her being late and other compliance issues.  He followed H.R. directives that prior to termination she should be given notice of this behavior and an opportunity to cure.  After he gave these warnings the employee admitted that resignation was a good idea.

42.  In fact, Ms. Coffman's initial criticism of Ms. Dagnesses for the January 2014 action (paragraph 41) died down without any threat of or warning of adverse action against Mr. Dagnesses.  Three (3) to five (5) months later, without warning (as Ms. Coffman wished this Female Sale's representative to have[1]), this incident became the pretext for the termination of Mr. Dagnesses.

43.  The further alleged, but pretextual justification for termination, occurred two (2) months prior to termination.  In February 2014, after a data entry clerk abandoned the position, the Office manager, "Sammy", (the person who was responsible for sending the termination paperwork to H.R.) did not send the paperwork to H.R. prior to sending the termination letter to the employee who abandoned the job.  This is protocol and Mr. Dagnesses, by e-mail, reminded Sammy of this prior to her sending the termination letter.  Notwithstanding that this was not Mr. Dagnesses' responsibility and the fact that he actually informed the responsible party, Sammy, to send the letter, Ms. Coffman copied the entire company of the incident and attempted to discredit and blame Mr. Dagnesses.  Even Sabina explained to Ms. Coffman, "What is the problem. Why are you making such a big deal of this? There is nothing we can do.  The person disappeared."

44.  As to the February 2014 incident, Ms. Coffman's initial criticism of Mr. Dagnesses died down without any threat or warning of adverse action against Mr. Dagnesses.  Two (2) months

---

[1] The policy at Defendants' company is to assure notice and warning prior to termination of an employee.  Ms. Coffman even admitted in a text to Plaintiff, Mr. Dagnesses, that no one should be terminated without an opportunity to correct the behavior.

later, without warning or opportunity to cure (as Ms. Coffman wished for all Female Sale's representative to have), this incident became the pretext for the termination of Mr. Dagnesses.

45.  As to either the January or February, 2014 incidents not one action taken or not taken by Mr. Dagnesses caused any harm to any person or to the company, but most importantly, there was no procedural, policy directive or other company rule violated by Mr. Dagnesses.  In fact, all action taken by Mr. Dagnesses was in direct line with the policy directives.

46.  On the day of termination the only pretext for termination was "George we feel that we are going in different directions, and you are no longer a good fit for the company, so I am letting you go effective immediately."

47.  Sabina was not aware that Mr. Dagnesses was being terminated.    Sabina commented to Ms. Coffman: "What is going on?"  Sabina later stated to Mr. Dagnesses: "I knew the moment she was going to have you under her thumb shew would terminate you."

48.  Plaintiff, Mr. Dagnesses, position/duties he once performed were filled by a Non-Hispanic Female, Sabina.  This was until six (6) months subsequent to Mr. Dagnesses' termination.  After six (6) months an advertisement was placed for a sales' manager position on Monster.com.  At this time and after notification to Defendants, Target Media and Target Operating, of the EEOC

compliant by Mr. Dagnesses, Target Media and/or Target Operating hired a male, non-Hispanic,
employee for a significant amount of the duties once performed by Mr. Dagnesses.

49.  Ms. Coffman was transferred subsequent to the new male employee complaining that he
could not work with Ms. Coffman.

50.  As to the adverse and harassing treatment referenced above, committed by Defendant,
Target Media and/or Target Operating, Females were not exposed to such treatment, only Males.

51.  As to the justification for termination, Females were not terminated for equally or greater
alleged infractions, but Males were adversely effected and/or terminated.

52.  As to the opportunity to counseling and opportunity to cure, Females were given counseling
and an opportunity to cure prior to termination, but Male employees were not.

53.  As to the adverse and harassing treatment referenced above, committed by Defendant,
Target Media and/or Target Operations, non-Hispanics, were not exposed to such treatment, only
Hispanics, including Plaintiff, Mr. Dagnesses.

54. As to the justification for termination, Non-Hispanics were not terminated for equally or greater alleged infractions, but Hispanics, including Plaintiff, Mr. Dagnesses, were adversely effected and/or terminated.

55. As to the opportunity to have counseling and an opportunity to cure, Non-Hispanics were given counseling and an opportunity to cure prior to termination, but Hispanics were not.

56. Plaintiff, Mr. Dagnesses, has fulfilled all conditions precedent to the institution of this action under 42 USCA section 2000e. On or about July 2, 2014, Mr. Dagnesses filed a complaint alleging racial and gender discrimination along with retaliation with the Equal Employment Opportunity Commission (EEOC). (Exhibit 1). This complaint was accepted for filing with the Florida Commission on Human Relations (FCHR) on the same day.

57. On or about August 3, 2015 a "Dismissal and Notice of Rights" was sent by the EEOC. (Exhibit 2 {voluntarily requested by Plaintiff}). This suit was filed within ninety (90) days of this notice.

58. All actions taken and not taken by Ms. Coffman were taken during the course and scope of her duties for Defendant, Target Media and/or Target Operating, and as a supervisor with direct control and authority over Plaintiff, Mr. Dagnesses.

## COUNT I
## TITLE VII, CIVIL RIGHTS ACT VIOLATION: DISCRIMINATION (Gender/Sex):

COMES NOW, Plaintiff, George Dagnesses, pursuant to Title VII, 42 USCA Section 2000 e of

the Civil rights act, sues Defendant, Target Media and Target Operating, for Gender/Sex

discrimination realleges as if set forth herein paragraphs 1-19, 25-52 and 56-58 of this amended

complaint and states:


59.  Defendants, Target Media and/or Target Operating, terminated Plaintiff, Mr. Dagnesses,

and/or adversely affected him because of his Sex/Gender, Male.

60.  When Defendants', Target Media and/or Target Operating's, agent engaged in the aforesaid

actions of terminating Plaintiff, Mr. Dagnesses, he/she was acting within the scope of his

authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence,

he/she acted in a supervisory capacity for Defendant(s).

61.  Any legitimate, non-discriminatory reason of Defendant, Target Media and/or Target

Operating, for termination of Plaintiff, Mr. Dagnesses, is a mere pretext for the actual reason for

termination: his Sex/Gender.

62.  As a direct and proximate result of the actions of the Defendant, Target Media and/or Target

Operating, described herein, Plaintiff, Mr. Dagnesses, has suffered damages, including, but not

limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of

enjoyment of life and loss of employment.

63. The Defendants, Target Media and/or Target Operating's, actions of terminating Plaintiff,

Mr. Dagnesses, were wanton, willful and recklessly indifferent to the rights of Plaintiff.  Plaintiff

is entitled to punitive damages because Defendants' actions were wanton, willful, malicious and

were recklessly indifferent to the Plaintiff's federally protected rights.

### PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the

position he had with the same salary level which Plaintiff would have had absent Defendants'

discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

### Jury Trial Demand:

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

### COUNT II
### TITLE VII, CIVIL RIGHTS ACT VIOLATION: DISCRIMINATION (Race/National Origin):

COMES NOW, Plaintiff, George Dagnesses, pursuant to Title VII, 42 USCA Section 2000 e of the Civil rights act, sues Defendants, Target Media and Target Operating, for Race/National origin discrimination, realleges as if set forth herein paragraphs 1-13, 17, 20-48 and 53-58 of this amended complaint and states:

64.  Defendant, Target Media and/or Target Operating, terminated Plaintiff, Mr. Dagnesses, and/or adversely affected him because of his Race and/or National Origin, Hispanic.

65.  When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of terminating Plaintiff, Mr. Dagnesses, he/she was acting within the scope of his authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

66.  Any legitimate, non-discriminatory reason of Defendant, Target Media and/or Target Operating, for termination of Plaintiff, Mr. Dagnesses, is a mere pretext for the actual reason for termination: his Race and/or National Origin, which is Hispanic.

67.  As a direct and proximate result of the actions of the Defendant, Target Media and/or Target Operating, described herein, Plaintiff, Mr. Dagnesses, has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and loss of employment.

68.  The Defendant, Target Media and/or Target Operating's, actions of terminating Plaintiff, Mr. Dagnesses, were wanton, willful and recklessly indifferent to the rights of Plaintiff.  Plaintiff is entitled to punitive damages because Defendants' actions were wanton, willful, malicious and were recklessly indifferent to the Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

## Jury Trial Demand:

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

## COUNT III
## TITLE VII, CIVIL RIGHTS VIOLATION: RETALIATION:

COMES NOW, Plaintiff, Gorge Dagnesses, pursuant to Title VII, 42 USCA Section 2000 e of

the Civil rights act, sues Defendants, Target Media and Target Operating, for retaliation,

realleges as if set forth herein paragraphs 1-58 of this amended complaint and states:


69.  Plaintiff, Mr. Dagnesses, was subject to disparate treatment, harassment and/or adverse

action due to his Race/National Origin and/or due to his Sex/Gender. (As specified above).   Mr.

Dagnesses then lawfully objected to and complained to personnel, including supervisor(s) of

Defendant, Target Media and/or Target Operating, regarding this violation of rights.  He

complained that the treatment was Racial/National origin harassment and discrimination (adverse

treatment), being he is Hispanic.  He also complained that the harassment and discrimination

(adverse treatment) was due to his Gender/Sex, being Male.

70.  The complaints and objections of Plaintiff, Mr. Dagnesses, were made with the good faith

belief that Defendant, Target Media and/or Target Operating, acted illegally and/or were made

by Mr. Dagnesses having had a reasonable basis for believing Target Media and/or Target

Operating acted illegally in violation of the rights of Hispanics in employment due to Race

and/or National origin and in violation of the rights of Men.  Target Media and/or Target

Operating, did in fact act illegally by adversely affecting, harassing and disparately treating Mr.

Dagnesses due to his Race/National origin and/or Sex/Gender.

71.  As a direct and proximate result of these complaints and petitions lodged by Plaintiff, Mr.

Dagnesses, to Defendant, Target Media and/or Target Operating, Mr. Dagnesses was adversely

effected by Target Media and/or Target Operating and/or discharged from his employment with

Target Media and/or Target Operating on or about April 20, 2014.

72.  At the time of termination of Plaintiff, Mr. Dagnesses, and at the time of the adverse effect

visited upon him by Defendant, Target Media and/or Target Operating, Defendant(s) was aware

of the charges/complaints of discrimination and harassment made against it and the objections to the violations of Federal Law aforementioned voiced by Mr. Dagnesses.

73.  The Plaintiff, Mr. Dagnesses', discharge from his employment by Defendant, Target Media and/or Target Operating, and the adverse employment action taken by Target Media and/or Target Operating, against Mr. Dagnesses were causally related to the complaints and petitions Mr. Dagnesses made to Target Media and/or Target Operating, concerning the racially discriminatory treatment of persons of Hispanic descent and/or Males.

74.  When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of terminating Plaintiff, Mr. Dagnesses and/or adversely affecting his employment, he/she was acting within the scope of his/her authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

75.  As a direct and proximate result of the actions of the Defendant, Target Media and/or Target Operating, Plaintiff has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and lost wages.

76.  The actions of terminating Plaintiff, Mr. Dagnesses, due to his complaints about the unlawful actions of Defendant, Target Media and/or Target Operating, were wanton, willful and recklessly indifferent to the rights of Plaintiff, Mr. Dagnesses.  Mr. Dagnesses is entitled to punitive damages because Target Media and/or Target Operating's actions were wanton, willful, and malicious and were recklessly indifferent to the Plaintiff's Federally protected rights.

77.  Any alleged legitimate, non-discriminatory reason for discharge and or adverse treatment are a mere pretexts for the actual reason for termination: retaliation for complaining about discrimination by Defendant against Hispanics and/or Men.

## PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked

absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

### Jury Trial Demand

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.


### COUNT IV
### TITLE VII, CIVIL RIGHTS VIOLATION: Harassment:

COMES NOW, Plaintiff, Gorge Dagnesses, pursuant to Title VII, 42 USCA Section 2000 e of the Civil rights act, sues Defendants, Target Media and/or Target Operating, for Sex/Gender based harassment and/or Race/National Origin based harassment, realleges as if set forth herein paragraphs 1-58 of this amended complaint and states:

78.  Plaintiff, Mr. Dagnesses, was subject to severe and pervasive mistreatment, harassment and/or adverse action due to his Race/National Origin and/or due to his Sex/Gender.

79.  The harassment was so severe and pervasive that it altered the terms and conditions of his employment and created a discriminatorily abusive working environment.  Due to his Race/National origin and/or Sex/Gender, he suffered the harassment as per paragraphs 17-22, 24-32 and 34-38.  These actions created a hostile work environment, permeated with discriminatory intimidation, ridicule and insult.  This conduct of Defendants was so consistent, severe, threatening and humiliating that it interfered with Ms. Dagnesses' job performance.  He could not implement his plans and strategies or attend meetings or conferences necessary to training.

80.  While Ms. Coffman never directly stated that this treatment, (referenced in paragraphs 17-22, 24-32 and 34-38) was due to Plaintiff, Mr. Dagnesses' race, national origin, Sex or Gender, her comments during Mr. Dagnesses' employment (referenced in paragraphs 14, 18-22 and 24) show her motives for the disparate and hostile treatment of Mr. Dagnesses was related to her expressed resentment and dislike for these protected attributes of Mr. Dagnesses.

81.  Further, Plaintiff, Mr. Dagnesses, was subject to the ultimate form of punishment, termination based upon lies and pretexts which were unworthy of belief.

82.  When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of harassing and adversely affecting Plaintiff, Mr. Dagnesses', employment terms, he/she was acting within the scope of his/her authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

83.  As a direct and proximate result of this harassment and adverse effects visited upon Plaintiff, Mr. Dagnesses, by Defendant, Target Media and/or Target Operating, he was injured, suffering damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and lost wages.

84.  These harassing actions by Defendant, Target Media and/or Target Operating, were wanton, willful and recklessly indifferent to the rights of Plaintiff, Mr. Dagnesses.  Mr. Dagnesses is entitled to punitive damages because Target Media and/or Target Operating's actions were wanton, willful, malicious and were recklessly indifferent to the Plaintiff's Federally protected rights.

### PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the

Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the

Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering,

restrain such unlawful actions, including the adverse employment affects and declare them

unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with

this action and grant such additional or alternative relief as may appear to the Court to be just and

equitable.

<u>**Jury Trial Demand**</u>

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.


<u>**COUNT V**</u>
**FLORIDA STATUTE S. 760.10, FLORIDA CIVIL RIGHTS: <u>DISCRIMINATION</u>**
**<u>(Sex/Gender)</u>**

COMES NOW, Plaintiff, George Dagnesses, pursuant to Section 760.10 of the Florida Civil

rights Act, sues Defendants, Target Media and Target Operating, for Gender/Sex discrimination

realleges as if set forth herein paragraphs 1-19, 25-52 and 56-58 of this amended complaint and

states:


85.  Defendant, Target Media and/or Target Operating, terminated Plaintiff, Mr. Dagnesses,

and/or adversely affected him because of his Sex/Gender, Male.

86.  When Defendant, Target Media and/or Target Operating 's, agent engaged in the aforesaid

actions of terminating Plaintiff, Mr. Dagnesses, he/she was acting within the scope of his

authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence,

he/she acted in a supervisory capacity for Defendant(s).

87.  Any legitimate, non-discriminatory reason of Defendant, Target Media and/or Target

Operating, for termination of Plaintiff, Mr. Dagnesses, is a mere pretext for the actual reason for

termination: his Sex/Gender.

88.  As a direct and proximate result of the actions of the Defendant, Target Media and/or Target Operating, described herein, Plaintiff, Mr. Dagnesses, has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and loss of employment.

89.  The Defendant, Target Media and/or Target Operating's, actions of terminating Plaintiff, Mr. Dagnesses, were wanton, willful and recklessly indifferent to the rights of Plaintiff.  Plaintiff is entitled to punitive damages because Defendant's actions were wanton, willful, malicious and were recklessly indifferent to the Plaintiff's State protected rights.

### PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

### Jury Trial Demand:

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

## COUNT VI
## FLORIDA STATUTE S. 760.10, FLORIDA CIVIL RIGHTS: <u>DISCRIMINATION</u>
### <u>(Race/National Origin)</u>

COMES NOW, Plaintiff, George Dagnesses, pursuant to Section 760.10 of the Florida Civil Rights Act, sues Defendants, Target Media and Target Operating, for Race/National origin discrimination, realleges as if set forth herein paragraphs 1-13, 17, 20-48 and 53-58, of this amended complaint and states:


90.  Defendant, Target Media and/or Target Operating, terminated Plaintiff, Mr. Dagnesses, and/or adversely affected him because of his Race and/or National Origin, Hispanic.

91.  When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of terminating Plaintiff, Mr. Dagnesses, he/she was acting within the scope of his authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

92.  Any legitimate, non-discriminatory reason of Defendant, Target Media and/or Target Operating, for termination of Plaintiff, Mr. Dagnesses, is a mere pretext for the actual reason for termination: his Race and/or National Origin, which is Hispanic.

93.  As a direct and proximate result of the actions of the Defendant, Target Media and/or Target Operating, described herein, Plaintiff, Mr. Dagnesses, has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and loss of employment.

94.  The Defendant, Target Media and/or Target Operating's, actions of terminating Plaintiff, Mr. Dagnesses, were wanton, willful and recklessly indifferent to the rights of Plaintiff.  Plaintiff is entitled to punitive damages because Defendants' actions were wanton, willful, malicious and were recklessly indifferent to the Plaintiff's State protected rights.

### PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants'

discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

### Jury Trial Demand:

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

### COUNT VII
### FLORIDA STATUTE S. 760.10, FLORIDA CIVIL RIGHTS: HARASSMENT
### (Race/National origin and Sex/Gender)

COMES NOW, Plaintiff, Gorge Dagnesses, pursuant to Section 760.10 of the Florida Civil Rights Act, sues Defendants, Target Media and/or Target Operating, for Sex/Gender based harassment and/or Race/National Origin based harassment, realleges as if set forth herein paragraphs 1-58 of this amended complaint and states:

95.  Plaintiff, Mr. Dagnesses, was subject to severe and pervasive mistreatment, harassment and/or adverse action due to his Race/National Origin and/or due to his Sex/Gender.

96.  The harassment was so severe and pervasive that it altered the terms and conditions of his employment and created a discriminatorily abusive working environment.  Due to his Race/National origin and/or Sex/Gender, he suffered the harassment as per paragraphs 17-22, 24-32 and 34-38.  These actions created a hostile work environment, permeated with discriminatory intimidation, ridicule and insult.  This conduct of Defendants was so consistent, severe, threatening and humiliating that it interfered with Ms. Dagnesses' job performance.  He could not implement his plans and strategies or attend meetings or conferences necessary to training.

97.  While Ms. Coffman never directly stated that this treatment, (referenced in paragraphs 17-22, 24-32 and 34-38) was due to Plaintiff, Mr. Dagnesses' race, national origin, Sex or Gender, her comments during Mr. Dagnesses' employment (referenced in paragraphs 14, 18-22 and 24) show her motives for the disparate and hostile treatment of Mr. Dagnesses was related to her expressed resentment and dislike for these protected attributes of Mr. Dagnesses.

98.  Further, Plaintiff, Mr. Dagnesses, was subject to the ultimate form of punishment, termination based upon lies and pretexts which were unworthy of belief.

99.  When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of harassing and adversely affecting Plaintiff, Mr. Dagnesses', employment terms, he/she was acting within the scope of his/her authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

100.  As a direct and proximate result of this harassment and adverse effects visited upon Plaintiff, Mr. Dagnesses, by Defendant, Target Media and/or Target Operating, he was injured, suffering damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and lost wages.

101.  These harassing actions by Defendant, Target Media and/or Target Operating, were wanton, willful and recklessly indifferent to the rights of Plaintiff, Mr. Dagnesses.  Mr. Dagnesses is entitled to punitive damages because Target Media and/or Target Operating's actions were wanton, willful, malicious and were recklessly indifferent to the Plaintiff's Federally protected rights.

### PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the

Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the

Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering,

restrain such unlawful actions, including the adverse employment affects and declare them

unlawful, award punitive damages and all reasonable attorney's fees incurred in connection with

this action and grant such additional or alternative relief as may appear to the Court to be just and

equitable.

## Jury Trial Demand

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.


## COUNT VIII
## FLORIDA STATUTE S 448.102: RETALIATION:

COMES NOW, Plaintiff, George Dagnesses, pursuant to Florida Statute Section 448.101 and

102 et. seq, sues Defendants, Target Media and/or Target Operating, for retaliation, realleges as

if set forth herein paragraphs 1-58 of this amended complaint and states:

102.  Plaintiff, Mr. Dagnesses, was subject to disparate treatment, harassment and/or adverse

action due to his Race/National Origin and/or due to his Sex/Gender. (As herein alleged).  Mr.

Dagnesses then lawfully objected to and complained to personnel, including supervisor(s) of

Defendant, Target Media and/or Target Operating, regarding this violation of rights.  He

complained that the treatment was Racial/National origin harassment and discrimination (adverse

treatment), being he is Hispanic.  He also complained that the harassment and discrimination

(adverse treatment) was due to his Gender/Sex, being Male.

103.  The complaints and objections of Plaintiff, Mr. Dagnesses, were made with the good faith

belief that Defendant, Target Media and/or Target Operating, acted illegally and/or were made

by Mr. Dagnesses having had a reasonable basis for believing Target Media and/or Target

Operating acted illegally in violation of the rights of Hispanics in employment due to Race

and/or National origin and in violation of the rights of Men.  Target Media and/or Target

Operating did in fact act illegally by adversely affecting, harassing and disparately treating Mr. Dagnesses due to his Race/National origin and/or Sex/Gender.

104. As a direct and proximate result of these complaints and petitions lodged by Plaintiff, Mr. Dagnesses, to Defendant, Target Media and/or Target Operating, Mr. Dagnesses was adversely effected by Target Media and/or Target Operating and/or discharged from his employment with Target Media and/or Target Operating on or about April 20, 2014.

105. At the time of termination of Plaintiff, Mr. Dagnesses, and at the time of the adverse effect visited upon him by Defendant, Target Media and or Target Operating, Defendant(s) was(were) aware of the charges/complaints of discrimination and harassment made against it and the objections to the violations of Federal and State Law aforementioned voiced by Mr. Dagnesses.

106. The Plaintiff, Mr. Dagnesses', discharge from his employment by Defendant, Target Media and/or Target Operating, and the adverse employment action taken by Target Media and/or Target Operating against Mr. Dagnesses were causally related to the complaints and petitions Mr. Dagnesses made to Target Media and/or Target Operating concerning the racially discriminatory treatment of persons of Hispanic descent and/or Males.

107. When Defendant, Target Media and/or Target Operating's, agent engaged in the aforesaid actions of terminating Plaintiff, Mr. Dagnesses and/or adversely affecting his employment, he/she was acting within the scope of his/her authority as Supervisor of Plaintiff, which was a supervisory position at Defendant(s) and hence, he/she acted in a supervisory capacity for Defendant(s).

108. As a direct and proximate result of the actions of the Defendant, Target Media and/or Target Operating, Plaintiff has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and lost wages.

109. The actions of terminating Plaintiff, Mr. Dagnesses, due to his complaint about the unlawful actions of Defendant, Target Media and/or Target Operating, were wanton, willful and recklessly indifferent to the rights of Plaintiff, Mr. Dagnesses.

110.  Any alleged legitimate, non-discriminatory reason for discharge and or adverse treatment are a mere pretexts for the actual reason for termination: retaliation for complaining about discrimination by Defendant(s) against Hispanics and/or Men.

## PRAYER FOR RELIEF

Plaintiff, George Dagnesses, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendant's discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

## **Jury Trial Demand**

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

## **COUNT IX**
## **BREACH OF CONTRACT against Target Operating (wage claim, Section 448.104, Fla. Stat.):**

COMES NOW, Plaintiff, George Dagnesses, sues Defendant, Target Operating, realleges as if set forth herein paragraphs 1-7 of this amended complaint and states:

111.  An agreement was entered into by the parties at the inception of Plaintiff, Mr. Dagnesses,' employment whereby he would be paid certain monthly commissions of 10% of sales made by his sale's team and a 5% quarterly bonus.  On or about 2007 through 2009 the commissions became due.

112.  Defendant, Target Operating, breached the agreement by not paying such commissions and bonuses.

113.  This debt was reaffirmed by Defendant, Target Operating, throughout the period of time 2009 through the latest being August 2014.

114.  Defendant, Target Operating, continues to refuse to pay money due for services provided by Plaintiff, Mr. Dagnesses.

115.  These breaches of the agreement by Defendant, Target Operating, were material to the terms of the parties' agreement.

116. All conditions precedent to the enforcement of the agreement have been fulfilled and/or waived by Defendant.

117. As a direct and proximate result of the foregoing breach Plaintiff has been injured.

118.  As a direct and proximate result of the breach by Defendant, Target Operating, Plaintiff, has paid and has agreed to pay the undersigned a fee.

Wherefore Plaintiff, George Dagnesses, respectfully requests that this Court enter judgment in his favor and award compensatory damages, costs, attorney's fees pursuant to Section 448.104, Fla. Stat. and all other such relief as this Court deems just.

## **Jury Trial Demand**

Plaintiff, George Dagnesses, demands a trial by jury on all issues trialable of right by a jury.

Respectfully Submitted,

Law Office of Joseph S. Shook, Esq.

BY: _____

Joseph S. Shook, Esq., Attorney for Plaintiff, George Dagnesses

FBN: 0780715

75 Valencia Ave.,  #4th Floor

Coral Gables FL, 33134

Telephone (305) 446-4177

Facsimile (305) 446-4565

shooklaw@bellsouth.net

### *Certificate of Service*

 I hereby certify that on January 15, 2016 I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

By: _____

Joseph S. Shook, Esq.

### **Service List**

Ms. Kelly Charles-Collins, Esq., Florida Bar No: 56261

kcharlescollins@hamiltonmillerlaw.com

Schuyler A. Smith, Esq., Florida Bar No.: 70710

ssmith@hamiltonmillerlaw.com

Hamilton, Miller and Birtisel, LLP

150 SE Second Ave., #1200

Miami FL, 33131

Telephone (305) 379-3686

Facsimile (305) 379-3690

# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
## Miami Division

GEORGE DAGNESSES, an individual,
  Plaintiff,

Vs.                                             Case no: 15- -cv-23989-UU

TARGET MEDIA PARTNERS, a foreign Corporation,
And TARGET MEDIA PARTNERS OPERATING
COMPANY, LLC, a foreign corporation,
  Defendants.
_____/


## AMENDED COMPLAINT


## EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

| Florida Commission On Human Relations | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

**Name** (indicate Mr., Ms., Mrs.)
**Mr. George Dagnesses**

| | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| | (305) 776-2699 | 07/11/1961 |

Street Address
**5378 SW 140th St**

City, State and ZIP Code
**Miami, FL 33196**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**
**Target Media Partners**

| | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | 50+ | (323)930-3123 |

Street Address
**1800 N Highland Ave. Suite 400**

City, State and ZIP Code
**Los Angeles, CA 90028**

**Name**

| | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address

City, State and ZIP Code

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02/2008**   Latest **04/2014**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been the victim of continuous and constant discrimination and harassment while employed with Target Media Partners. This discrimination is because I am male, it is also because of my Hispanic origin, and my disability. Linda Coffman is a Vice-President at TMP, and she has shown a preferential treatment to female employees compared to male employees. Ms. Coffman treated me in a physically and verbally abusive manner. She would demean me on a regular basis, and subject to racial slurs. She has called me a "spic" on multiple occasions. She has also physically battered me by poking me in my chest. I am the only employee that received this type of treatment. I complained to Human Resources about these incidents, but nothing was done to protect me. The treatment continued.

My pay has been interfered with on numerous occasions during my employment with Target. No other employee was subject to this type of frequent and constant change in their compensation. This disparate treatment, harassment, and discrimination was not limited to just my sex and Hispanic origin.

I was also diagnosed with cancer. I requested leave as I needed immediate surgery. Ms. Coffman did not believe my diagnosis. Even after I provided a doctor's note, she still called the doctor because she falsely accused me of faking my illness. I again brought my concerns to Human Resources. This issue, like the others, was ignored. No other employee had to endure this humiliating and degrading behavior. I provided appropriate documentation, but was still falsely accused of faking my illness.

I was also forced to take a different position with the company. I did not want the new position, but was threatened with a "take-it or leave it" scenario, as they said they were eliminating my current position. I was forced to take this position at a much lower salary than the previous person in the position. I also had to continue to perform all of my old job duties, as well as the job duties of the new position. Ms. Coffman also refused to provide me with proper training for the new position. I also had $8000 dollars withheld from my paychecks in $400 increments between 2012 and 2013. These deductions were not authorized by me, I again brought my concerns to Human

Resources, and again nothing was done. Target took no remedial protective measures. I was constantly subjected to this harassment and discrimination. When I would bring my concerns to management/Human Resources, I was ignored. I was routinely singled out and targeted because I was a heterosexual, Hispanic male. This made me a target for Ms. Coffman's offensive conduct and harassment. My cancer diagnosis was just one more reason Ms. Coffman would use to demean and discriminate against me.

I believe I have been discriminated against due to my sex (male), disability, and national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. I also believe I have been retaliated against in violation of Title VII.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 7/2/2014                _[signature]_<br>Date                Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

1

## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
### Miami Division

GEORGE DAGNESSES, an individual,
      Plaintiff,

Vs.                             Case no: 15- -cv-23989-UU

TARGET MEDIA PARTNERS, a foreign Corporation,
And TARGET MEDIA PARTNERS OPERATING
COMPANY, LLC, a foreign corporation,
      Defendants.
_____/

## **AMENDED COMPLAINT**


## **EXHIBIT 2**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | George Dagnesses<br>15378 Sw 140th Street<br>Miami, FL 33196 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2014-04538 | Delia Hernandez,<br>Investigator | (305) 808-1818 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Ozzie L. Black,
Acting District Director

AUG 0 3 2015

*(Date Mailed)*

cc:     Karen Heinze
Director, Human Resources
TARGET MEDIA PARTNERS
1800 Highland North Highland Avenue - 4th Floor
Los Angeles, CA 90028